

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00599-CV

**IN THE INTEREST OF B.R.**, A.R., X.R., and J.R., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02347
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  January 7, 2015

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This is an accelerated appeal from the trial court's judgment terminating appellant's

parental rights to her four children, B.R., A.R., X.R., and J.R.[1]  On appeal, appellant asserts the

evidence is insufficient to support a finding that termination is in the children's best interest.  We

agree.

## BACKGROUND

Appellant did not appear at the termination hearing, and the only witness who testified was

Nicole Curel, a supervisor with the Texas Department of Family and Protective Services ("the

Department").  Curel began monitoring the case when the children first came into the Department's

temporary custody in October 2013.  Curel stated the Department received a referral in September

---

[1] The children's father relinquished his paternal rights.

2013 for neglectful supervision by both parents of one of the children, B.R. The parents were parked near the Malt House when police approached their car and discovered approximately eight grams of heroin in the vehicle. B.R. was sitting in his father's lap in the car at the time, and appellant and another male were also in the car. The record contains no information about the location of the other three children at the time.

Following this incident, it appears all four children were initially placed with a maternal aunt who did not have the necessary living arrangements to provide care for the children long term. The children were later placed with their maternal grandmother on July 2, 2014. As of the August 14, 2014 termination hearing, two of the children were three years old and the other two were two years old. When asked if previous Department "history" with the grandmother would be a barrier to permanency for the children with the grandmother, Curel responded "It was 14 years ago, so I don't believe so." She believed the grandmother would be eligible to adopt the children, and it was in their best interest to remain in the grandmother's home.

Curel said she had no recent contact with appellant, but after viewing appellant's Facebook page, Curel believed appellant was "in a relationship with a new individual who smokes marijuana and has guns." Curel also said appellant had missed "a couple" of visits with her children in July and August. Based on the visits appellant had with her children, Curel did not believe appellant had maintained significant contact with them because she had missed several visits throughout the pendency of the case. Curel said appellant had done "nothing" to demonstrate she could provide the children with a safe and stable home, although the Department had made reasonable efforts to work with her. According to Curel, appellant completed some of the requirements of her service plan; e.g., parenting and empowerment classes. Curel said appellant did not complete anger management classes or participate in a psychological evaluation, and she had started, but not

completed, individual counselling. Appellant also failed to appear for drug tests and a hair follicle test.

Curel believed appellant's behavior in September 2013 endangered B.R.'s well-being. She was not asked whether appellant's behavior in September 2013 endangered the well-being of the other three children. Curel said appellant had a prior criminal history in that she was arrested "for theft 50 to 500 and robbery second degree felony" in April.[2] Curel said appellant has done nothing to rectify the situation or demonstrate she has made any substantial changes in her life. However, Curel admitted she had no contact with appellant, although the Department caseworker had contact in mid-July.

Following the termination hearing, the trial court terminated appellant's parental rights based upon finding she (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. TEX. FAM. CODE ANN. § 161.001(1)(D),(E),(O) (West 2014).

## BEST INTEREST

A trial court may order termination of the parent-child relationship only if the court finds by clear and convincing evidence one or more statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2); § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

---

[2] Curel did not state the year of the arrest, the details of the offenses, or whether the arrest resulted in a conviction.

established." TEX. FAM. CODE § 101.007. We review the sufficiency of the evidence to support the termination of parental rights under the well-established standards for legal and factual sufficiency of the evidence. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

Courts also may apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.*

Finally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

## A.     Section 263.307(a) Factors

Other than the ages of the four children, no evidence was adduced regarding any physical or mental vulnerabilities of any of the four children. The record contains no evidence of the frequency and nature of out-of-home placements, if any, which may have occurred before September 2013. Except for Curel's testimony that B.R. was sitting on his father's lap in the car when the police found the heroin, there is no evidence of the magnitude, frequency, and circumstances of the harm, if any, to any of the four children. There is no evidence in the record

that any of the four children have been the victim of repeated harm after the initial report and intervention by the Department, or whether any of the children have expressed any fear of living in or returning to their home. Curel stated appellant began but did not complete individual counseling; however, there is no other evidence regarding whether the children, their grandmother, other family members, or others who have access to the children's home have undergone psychiatric, psychological, or developmental evaluations. Curel testified appellant was a passenger in the car when the heroin was discovered, she has not participated in any drug treatment,[3] she failed to appear for drug and hair follicle tests, and she is believed to be "in a relationship with a new individual who smokes marijuana and has guns" based on Curel's viewing of appellant's Facebook page. However, there is no evidence of a history of abusive or assaultive conduct by the children's family or others who have access to the children's home.

Curel stated the grandmother had a "history" with the Department, but she was not asked to explain the "history." The children had been with their grandmother for less than two months before the termination hearing commenced, and Curel offered only the conclusory statement that it was in the children's best interest to remain with the grandmother. There is no evidence of any willingness and ability of the children's family to seek out, accept, and complete counseling services, to cooperate with and facilitate the Department's close supervision, the willingness and ability of the children's family to effect positive environmental and personal changes within a reasonable period of time, whether the grandmother demonstrates adequate parenting skills, and whether an adequate social support system consisting of an extended family and friends is available to the children.

---

[3] Curel admitted drug treatment was not included in appellant's service plan.

**B.      The *Holley* Factors**

We will assume the children are too young to express their desires.  Except for Curel's conclusory statements that placement with the grandmother was "working out" for the  children, there is no evidence of the emotional and physical needs of any of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the grandmother seeking custody, the programs available to assist the grandmother to promote the best interest of the children, the grandmother's plans for the children, or the stability of the grandmother's home.  Other than evidence that appellant was a passenger in the car when the heroin was discovered, she is "believed" to be "in a relationship with a new individual who smokes marijuana and has guns" based on Curel's viewing of appellant's Facebook page, and Curel's testimony that appellant missed visitations, there is no other evidence of any acts or omissions by the appellant that may indicate the existing parent-child relationship is not a proper one.  There is no evidence of any excuse for appellant's acts or omissions because appellant did not appear at trial to testify, the caseworker did not appear at trial to testify, and Curel admitted she had had no contact with appellant.

**C.      Other Considerations**

The evidence proving one or more statutory grounds for termination consisted of appellant's failure to complete the entirety of her service plan and the single incident in September 2013—and that incident involved only one of the four children.  *See In re C.H.*, 89 S.W.3d at 28 (such evidence does not relieve the State of its burden to prove best interest).  Other than Curel's testimony, no other witness testified and no evidence was admitted.[4]  Appellant demonstrated

---

[4] The trial court took judicial notice of its files.  "A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed."  *In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.).  Therefore, a court may take judicial notice that a pleading has been filed in the case, that it has signed an order, or of the law of another jurisdiction.  *Id.*  Thus, in this case, the trial court could have

some interest in the proceedings because she appeared at every hearing, except the first trial setting of July 28, 2014, which was reset to August 14, 2014 and at which she also did not appear. The trial court stated on the record that it was "very concerned about why [appellant] appeared at all the prior hearings, but not today . . . ." Curel testified B.R. was in the car when the heroin was discovered by the police. However the record contains no evidence about or even a mention of the other three children except their names and birthdates. Curel's agreement that it was in the children's best interest to terminate appellant's parental rights and it was in their interest to "move on" was conclusory. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (holding that "conclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence[, a]nd, '[a]lthough [a parent's] behavior may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.'").

## CONCLUSION

After reviewing the entire record, we conclude the State did not meet its burden to establish by clear and convincing evidence that termination of appellant's parental rights to her four children is in the children's best interest. Therefore, we reverse that portion of the trial court's judgment terminating appellant's parental rights and render judgment denying the State's petition for termination of appellant's parental rights. We affirm that portion of the trial court's judgment terminating the children's father's parental rights.

---

properly taken judicial notice that it signed an order adopting the family service plan and what the plan listed as the necessary requirements appellant was required to complete before her children would be returned to her. *Id.* Here, in addition to various pleadings and orders, the clerk's record contains only a September 25, 2013 affidavit attached to the State's petition for termination, and a copy of the Family Service Plans for the parents. A court may not take judicial notice of the *truth* of allegations in its records. *See id.* (emphasis added) (holding trial court could not take judicial notice of allegations caseworker made in family service plan or in affidavit attached to Department's petition). Therefore, the allegations contained in the affidavit and appellant's service plan cannot support the termination order. Accordingly, we are limited to reviewing only Curel's testimony at the termination hearing.

Because appellant's challenge to the Department's Family Code section 153.131 conservatorship was not subsumed within her appeal of the termination order and was not challenged on appeal, we also affirm the trial court's appointment of the Department as the managing conservator of the children pursuant to section 153.131. *See In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007) (explaining procedure to be followed by a parent, the Department, and the trial court when a judgment terminating parental rights is reversed by the court of appeals but the Department's conservatorship pursuant to section 153.131 is affirmed); *see also In the Int. of R.S.D.*, No. 04-13-00665-CV, 2014 WL 4335354, at *4, n.5 (Tex. App.—San Antonio Sept. 3, 2014, no pet.).

Sandee Bryan Marion, Chief Justice