

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00709-CV

**IN THE INTEREST OF N.F.L.**, a Child

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 14-12-00205CVL
Honorable Melissa Uram-Degerolami, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  April 13, 2016

AFFIRMED

This is an appeal from a trial court's order terminating appellant father's ("Father") rights to his child, N.F.L.[1]  On appeal, Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the child's best interest.  We affirm the trial court's judgment.

### BACKGROUND

When N.F.L. was born, she and her mother tested positive for illegal drugs.  The hospital contacted the Texas Department of Family and Protective Services ("the Department").  Three

---

[1] In its order, the trial court also terminated the parental rights of N.F.L.'s mother based on her decision to execute an affidavit of relinquishment pursuant to section 161.001(b)(1)(K) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(K) (West Supp. 2015).  N.F.L.'s mother did not appeal from the order of termination. Accordingly, she is not a party to the appeal.

days after N.F.L.'s birth, the Department filed its original petition, seeking termination in the event reunification between N.F.L. and her parents was impossible. In addition, the Department sought and received an emergency order of protection, pursuant to which the Department was named temporary sole managing conservator of N.F.L.

The Department held a family group conference at which both parents and their attorneys, among others, were present. At this conference, each parent was presented with a service plan and given an opportunity to ask questions and receive information about services. Father's plan required, among other things, that he maintain weekly contact with his Department caseworker, acquire a job and stable housing, participate in individual counseling, complete a psychological assessment, complete parenting classes, stay away from all known drug environments, participate in all scheduled parent-child visitations, participate in a drug and alcohol assessment, participate in random drug testing, and follow all recommendations resulting from required assessments and testing. Of these requirements, Father completed only the drug and alcohol assessment and participated in one random drug test.

Ultimately, the Department moved to terminate Father's parental rights. After a final hearing before the trial court, at which Father participated telephonically from federal prison, the trial court found Father: (1) constructively abandoned N.F.L.; (2) failed to comply with the provisions of a court order that set out the actions necessary for him to reunite with N.F.L.; and (3) used a controlled substance in a manner that endangered N.F.L. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P) (West Supp. 2015). The trial court further found termination of Father's parental rights would be in N.F.L.'s best interest. *See id.* § 161.001(b)(2). Accordingly, the trial court rendered an order terminating Father's parental rights. Thereafter, Father perfected this appeal.

ANALYSIS

On appeal, Father does not challenge the evidence with regard to the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1)(N), (O), (P). Rather, Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in N.F.L.'s best interest. *See id.* § 161.001(b)(2).

### *Standard of Review*

Under the Code, a court has authority to terminate a parent's rights to a child only upon proof by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code, and that termination is in the best interest of the child. *Id.* § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re B.R.*, 456 S.W.3d 612, 615 (Tex. App.—San Antonio 2015, no pet.). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *B.R.*, 456 S.W.3d at 615. Courts use this heightened standard of review because termination of parental rights implicates due process as it results in permanent and unalterable changes for both parent and child. *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). Therefore, when we review a trial court's best interest finding, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that termination was in the child's best interest. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With regard to legal sufficiency challenges in termination cases, we view the evidence in the light most favorable to the trial court's findings and judgment, and any disputed facts are resolved in favor of that court's findings if a reasonable fact finder could have so resolved them. *Id.* We are required to disregard all evidence that a reasonable fact finder could have disbelieved,

and we must consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In other words, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

In a factual sufficiency review, we also give due deference to the trier of facts findings, avoiding substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

We are mindful, however, that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *J.P.B.*, 180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id*.

### *Applicable Law*

In making a best interest determination, we may take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976). These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the

parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* And, in conducting our analysis, we focus not on the best interest of parent, but on the best interest of the child. *In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.).

Although proof of acts or omissions under section 161.001(b)(1) of the Texas Family Code does not relieve the Department from proving the best interest prong, the same evidence may be probative of both issues. *C.H.*, 89 S.W.3d at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)); *B.R.*, 456 S.W.3d at 615. In conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *B.R.*, 456 S.W.3d at 616 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Additionally, a fact finder may judge a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

There is a strong presumption that maintaining the parent-child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, permanently placing a child in a safe environment in a timely manner is also in a child's best interest. *B.R.*, 456 S.W.3d at 615; *see* TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider the factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5)

whether the child is fearful of living in, or returning to, the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b); *see In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (citing *In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.)); *B.R.*, 456 S.W.3d at 615.

### *The Evidence*

In reviewing the evidence, we have considered the *Holley* factors as well as those as set out in section 263.307(b) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley*, 544 S.W.2d at 371–72. We have also considered the acts or omissions found by the trial court under section 161.001(b)(1) of the Code, as well as the circumstantial evidence, any subjective factors, and the totality of the evidence. *See R.S.D.*, 446 S.W.3d at 820.

1. *Desires of the Child*

At the time of trial, N.F.L. was less than a year old. Thus, she is unable to express her desires regarding conservatorship. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544

S.W.2d at 371–72. However, the trial court could consider, with regard to N.F.L.'s desires, testimony regarding her current placement and the time spent with her biological family. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Department caseworker, Jacquelynn Ramsay, testified N.F.L. has been with her foster parents since she was three days old. According to Ms. Ramsay, the child is content in the home and "very bonded" with her foster parents. *See id.* The evidence establishes that for the first four months of N.F.L.'s life, Father visited her four times. *See id.* Thereafter, his visitation was suspended because he became uncooperative, failed to engage in services, and refused to provide the caseworker with his home address. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services and cooperate with agency's supervision); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect positive changes within reasonable time); *Holley*, 544 S.W.2d at 371–72. There was also a concern that Father was using drugs — a hair follicle test was requested, but Father refused. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by child's family); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. After his visitation was suspended, Father sent no letters or gifts. *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. He took no action that would indicate his desire to maintain a relationship with N.F.L. *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. Father admitted he had several months to try to establish a relationship with N.F.L., but failed to do so.

   2. *Emotional & Physical Needs/Emotional & Physical Danger*

As noted above, N.F.L. is merely an infant. N.F.L.'s age renders her vulnerable if left in the custody of a parent who is unable or unwilling to attend to her needs. *See* TEX. FAM. CODE

ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72; *In re J.G.M.*, No. 04-15-00423-CV, 2015 WL 6163204, at *3 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem op.). She will, therefore, require constant emotional and physical support, relying on caretakers for all her needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. This need for emotional and physical support will continue for many years. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

In addition, the evidence establishes N.F.L. has special needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. She tested positive for drugs at birth. She now suffers from "respiratory issues" that require "a lot of suctioning" and visits to the doctor. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. Doctors suspect N.F.L. may suffer from microcephaly — a small skull. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. This potential condition requires continued monitoring by proper physicians.

With regard to the potential emotional and physical danger to N.F.L. if she were to be placed with Father, we again note that Father has not challenged the trial court's findings that he: (1) constructively abandoned N.F.L.; (2) failed to comply with his court-ordered service plan; and (3) used drugs. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P). And although this does not relieve the Department from proving termination is in N.F.L.'s best interest, Father's decision to engage in conduct that endangered N.F.L. is probative on the issue of her best interest. *See* *C.H.*, 89 S.W.3d at 28; *B.R.*, 456 S.W.3d at 615.

The Department presented evidence that the few times Father visited his daughter, those supervising the visit believed he was under the influence of drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Father participated in only one drug test, and thereafter, the Department, despite repeated efforts, was

unable to locate him. Moreover, after completing his drug and alcohol assessment, it was recommended that Father complete an outpatient program, but he never did. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. During his testimony, Father admitted using drugs — amphetamines — while N.F.L. was in the Department's custody. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72; *see also J.O.A.*, 283 S.W.3d at 345 (recognizing that parent's drug use and impact on ability to parent may qualify as endangering course of conduct); *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth, 2007, no pet.) (holding that parent's drug use supports finding that termination is in best interest of child). He further admitted that he could not "be a good parent to" N.F.L. when he was using amphetamines. *See J.O.A.*, 283 S.W.3d at 345; *M.R.*, 243 S.W.3d at 821. His use of drugs at this critical juncture in the life of his child, as well as his failure to enter outpatient treatment as recommended, is evidence of endangerment. *See Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Moreover, at the time of trial, Father was incarcerated, facing three federal charges relating to "smuggling illegal immigrants into the county." *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Although Father speculated he might be released on bond in four to six months, he conceded that even if released, he would be monitored until his trial. Thereafter, if convicted, he could be sent to federal prison and he had no idea how much time he might be required to serve. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)). Although incarceration by itself will not justify termination, a parent's recurrent criminal acts may constitute sufficient evidence

of conduct that endangers a child and a court may consider it in determining the best interest of the child. *Id.*; *M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth, 2007, no pet.). Father's inability to maintain a lifestyle free from criminal activity would place N.F.L. in emotional and physical danger. *See M.R.*, 243 S.W.3d at 821 (holding evidence of parent's unstable lifestyle can support fact finder's conclusion that termination is in child's best interest). Thus, the evidence shows criminal conduct by Father and great uncertainty in his ability to attend to any of N.F.L.'s needs in the foreseeable future.

Finally, Father testified during cross-examination by the mother's attorney that he had been "physically violent" with N.F.L.'s mother. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (whether there is history of abusive or assaultive conduct by child's family); *Holley*, 544 S.W.2d at 371–72. He admitted striking her and breaking her finger. Domestic violence is evidence of physical and emotional endangerment. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). And as noted above, the trial court was entitled to infer from this past conduct, that similar conduct would recur. *See B.R.*, 456 S.W.3d at 616

The evidence set out above shows Father engages in criminal conduct and exhibits poor judgment. His choice of lifestyle portends future instability. *B.R.*, 456 S.W.3d at 616 (holding that fact finder may judge parent's future conduct by past conduct in determining whether termination is in child's best interest). His criminal activity includes use of illegal drugs, smuggling of illegal immigrants, and domestic violence. Father used illegal drugs knowing his parental rights were in question, thereby wholly ignoring N.F.L.'s needs.

### 3. *Parenting Abilities/Available Programs*

The evidence set out above is also relevant to Father's inability to properly parent. Father chose drug use during a time period when undertaking services to regain custody should have been given precedence. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.*

§ 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. He chose to engage in activity that subjected him to federal incarceration, again during a time when his daughter should have been his priority. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. By his own admission, he did little to establish a relationship with N.F.L. while she was in Department custody.

Moreover, and as admitted by his failure to challenge the trial court's predicate finding, he constructively abandoned N.F.L. and failed to comply with the requirements of his court-ordered service plan, despite having been advised at the family conference that completion of services was necessary to obtain reunification with his child. *See C.H.*, 89 S.W.3d at 28 (holding proof of acts or omissions under section 161.001(b)(1) is probative of best interests); *B.R.*, 456 S.W.3d at 615 (same).

The Department created a service plan for Father and the trial court adopted the plan as a requirement for reunification. The plan was presented to Father at the family group conference, which he attended with his attorney. Father was given a copy of the plan. Ms. Ramsay testified that at the conference the parents were able to talk about the required services and the details relating thereto. According to Ms. Ramsay, the plan required Father to: (1) complete paternity testing as scheduled; (2) maintain weekly contact with his Department caseworker, Ms. Ramsay; (3) acquire a job and stable housing; (4) participate in individual counseling; (5) complete parenting classes; (6) stay away from all known drug environments; (7) participate in all scheduled parent-child visitations; (8) participate in a drug and alcohol assessment; (9) participate in random drug testing, and follow all recommendations resulting from required assessments and testing; and (10) engage in individual counseling. Ms. Ramsay testified that of these requirements, Father completed only the drug and alcohol assessment and participated in one random drug test. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

And, although he completed the drug and alcohol assessment, he declined to follow the recommendation of outpatient drug rehabilitation. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

As for weekly contact with his caseworker, Ms. Ramsay testified that at the conference, she provided Father with all of her contact information. However, soon after his visit with N.F.L. in March 2015 — approximately three months after the child's removal — Father discontinued contact with Ms. Ramsay. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. Ramsay testified she attempted to locate Father at the address he had provided and at his parents' residence, but he was not there. He failed to appear for a scheduled hearing. She spoke with his mother, but she stated she did not know where he was living. All attempts to find him failed. She finally learned he had been arrested in August 2015 in Webb County.

The evidence establishes that despite the availability of services and programs provided by the Department, Father chose not to engage. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Based on the evidence showing Father's almost complete failure to participate in the available programs and services, he has demonstrated a lack of motivation to improve his parenting abilities, which are questionable given his lifestyle choices. *See In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth, 2003, no pet.) (holding that trier of fact could have formed firm belief that parent was not motived to improve parenting abilities given her failure to avail herself of programs provided).

4. *Plans for Child by Those Seeking Custody/Stability of Home or Proposed Placement*

Ms. Ramsay testified N.F.L. is currently in a "foster to adopt home" with her half-sister. N.F.L. was placed in the home when she was three days old. The foster parents are licensed caregivers, having undergone training with regard to children with emotional and medical needs.

*See Holley*, 544 S.W.2d at 371–72. N.F.L., as previously noted, suffers from respiratory issues and may have microcephaly. Her foster parents have ensured she visits doctors as necessary and that she is cared for according to her special needs. *See id.*

Ms. Ramsay told the court N.F.L. is "calm and content" and is bonded with her foster parents. *See id.* According to Ms. Ramsay, N.F.L. seems happy, never expressing any sort of distress. *See id.* In addition to bonding with her foster parents, N.F.L. has bonded with her half-sister. *See id.* Her half-sister is very protective and loves N.F.L. very much. The Department's plan is for N.F.L. and her half-sister to be adopted together by their current foster parents. *See id.*

Father's lack of stability is set forth in our discussion above. The evidence shows he is a drug user and is currently incarcerated. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Father admits that at this time he cannot care for N.F.L., but testified that when he is released, he would "hope to put more effort into the classes, anger management, the counseling, the psychological evaluation." *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. He advised that until he could care for N.F.L. himself, he "could have people do it." *See* TEX. FAM. CODE ANN. § 263.307(b)(13) (whether adequate social support system consisting of extended family and friends is available to child); *Holley*, 544 S.W.2d at 371–72. Specifically, he stated his mother could take care of N.F.L.

Ms. Ramsay admitted that Father's parents — N.F.L.'s grandparents — tried "to step up to the plate to serve as care givers." *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. However, the Department found that placing N.F.L. with them would not be appropriate. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. Ms. Ramsay testified there were concerns of ongoing drug use with these grandparents. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. In addition, the grandparents "were not forthcoming with history with the Department and CPS even when directly asked." *See* TEX.

FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. The Department was further concerned because the grandmother approached some of the references she provided to ensure they gave positive information. One of the references later called Ms. Ramsay and advised that she had lied to the person conducting the home study because the grandmother was standing next to her at the time. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. This person expressed concern, stating the grandmother had made derogatory remarks about N.F.L., stating they were only interested in custody because they were going to "get a check." *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72.

5. *Acts or Omissions Indicating Parent-Child Relationship Not Proper/Excuses*

The evidence of acts or omissions by Father that indicate he had an improper relationship with N.F.L. are those set forth above in our discussion of Father's acts that physically and emotionally endangered N.F.L. — drug use, incarceration, domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Additional omissions are detailed in our discussion of his lack of parenting abilities, as well as his failure to complete almost all of the service plan requirements.

Father provided no excuses for his drug use, violation of federal law, or domestic violence against N.F.L.'s mother — other than to say the domestic violence only happened once. *See* *Holley*, 544 S.W.2d at 371–72. As to his failure to complete the paternity test, he simply stated, "I didn't want to go do that." *See id.*

He did provide some testimony in an attempt to explain his failure to complete almost all of the requirements under the service plan. *See id.* He claimed he could not contact Ms. Ramsay or go to any classes because he lost the paper containing the contact information. *See id.* He testified he did attend "one or two" counseling sessions, but he stopped going because of transportation issues. *See id.* Father stated he tried to find a ride, but was unsuccessful. *See id.*

Father also testified that he has been unable to attempt services at this time due to his incarceration. *See id.* However, the evidence shows Father was not incarcerated until approximately seven months *after* he received his service plan.

<u>*Application of the Law to the Evidence*</u>

The evidence shows Father has had almost no contact with N.F.L. since her birth. *See U.P.*, 105 S.W.3d at 230. N.F.L. has special needs and requires an attentive caretaker. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. Her age, respiratory issues, and potential microcephaly make her especially vulnerable. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

During the time period when Father was supposed to attend to his service plan, he was using drugs and was ultimately incarcerated for several pending federal offenses. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. It is unclear if or when Father will be released from federal custody. In addition, Father admitted to engaging in domestic violence against N.F.L.'s mother, hitting her and breaking her finger. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72.

N.F.L. is currently in a stable home with her half-sister and foster parents who desire to adopt both of them. *See Holley*, 544 S.W.2d at 371–72; *U.P.*, 105 S.W.3d at 230. The foster parents are specially trained and have been dealing with N.F.L.'s special needs. She has bonded with her foster parents and her half-sister. *Holley*, 544 S.W.2d at 371–72. The alternative placement suggested by Father — N.F.L.'s paternal grandparents — were found to be inappropriate. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. There were suspected drug issues, prior history with the Department, and questions about their true desire to care for the child. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72.

In sum, we hold the relevant *Holley* factors weigh heavily in favor of a finding that termination was in N.F.L.'s best interest. Accordingly, recognizing that in conducting a best interest analysis, the trial court was permitted to (1) consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, and (2) judge Father's future conduct by his past conduct, we hold the trial court was within its discretion in finding termination of Father's parental rights would be in N.F.L.'s best interest. *See B.R.*, 456 S.W.3d at 616. In other words, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the child's best interest. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

Based on the foregoing, we hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find termination was in N.F.L.'s best interest. Accordingly, we hold the trial court did not err in terminating Father's parental rights, overrule Father's sufficiency complaints, and affirm the trial court's termination order.

Marialyn Barnard, Justice