

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-21-00228-CV
_____

IN THE INTEREST OF A.M., A CHILD

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 29151; Honorable Dan Mike Bird, Presiding

January 26, 2022

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, C.M., appeals from the trial court's order terminating his parental rights to his daughter, A.M.[1] By a sole issue, he contends the trial court committed reversible error in finding clear and convincing evidence to support the trial court's best interest finding. We affirm.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2021). *See also* TEX. R. APP. P. 9.8(b). The mother's parental rights were also terminated but she did not appeal.

**BACKGROUND**

The family has a history with Appellee, the Texas Department of Family and Protective Services, involving A.M.'s two older siblings. Prior to the incident that led to A.M.'s removal from her home, C.M. and A.M. resided with C.M.'s mother, A.M.'s paternal grandmother. At the time, C.M. was a truck driver and was frequently away from home.

On September 22, 2020, when A.M.'s mother took her to school, the mother was arrested for possession of methamphetamine on school property. Two days later, the school reached out to the Department's investigator regarding allegations made by A.M. that her father had been arrested for alleged crimes against the mother. The Department commenced an investigation and the investigator interviewed A.M. at the school.

During the interview, A.M. made outcries of sexual misconduct by her father which the investigator deemed credible. A.M. also alleged that her father used methamphetamine in her presence. C.M. was arrested and confined; however, he was subsequently released when he posted bond. Concerned about A.M.'s safety, the Department placed her in a temporary emergency shelter while attempting to find suitable long-term placement.

As a part of the State's investigation, A.M. was taken to a children's advocacy center for a forensic interview on September 30, 2020. During the interview, she revealed that she was afraid of her father and described occurrences of sexual conduct by him in her presence. She also described instances of domestic violence against her mother by

2

her father.[2]  A.M. was adamant about only wanting to live with her mother.  According to one of two caseworkers who supervised A.M.'s case,[3] A.M. made allegations against her father hopeful that she would be allowed to reside with her mother.  The second caseworker testified that when A.M. realized she would not be allowed to reside with her mother, she recanted the allegations of sexual misconduct to her counselor and the caseworker on October 8, 2021.

The former caseworker testified at trial that C.M. has a criminal history.  She was unsure, however, of any specific convictions.  Over objection, she was permitted to testify that she was unaware if there were any charges pending against C.M. based on the allegations made by A.M.

At the commencement of the final hearing, C.M.'s attorney announced "not ready." He advised the trial court that he had made attempts to contact C.M. by mail and email and had not had any communication from him since a prior hearing.  Based on the expedited timeline for termination proceedings, the trial court proceeded with the final hearing.  After the presentation of testimony, the trial court found the Department had presented clear and convincing evidence to support termination of C.M.'s parental rights to A.M. on the following grounds:

- failure to support A.M. in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition;

- constructively abandoning A.M. who had been in the Department's care for not less than six months and (1) the Department made reasonable efforts

---

[2] In the exhibit admitted into evidence, A.M. graphically described sexual conduct by her father as he attempted to sexually gratify himself in her presence.

[3] The former caseworker supervised the case from its inception until July 2021.  Thereafter, a second caseworker was assigned to the case.

3

to return the child; (2) he had not regularly visited or maintained significant contact with A.M.; and (3) he demonstrated an inability to provide the child with a safe environment; and

- failure to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his child who had been in the Department's care for not less than nine months as a result of the child's removal for abuse or neglect.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(F), (N), and (O) (West Supp. 2021). The trial court further found that termination of C.M.'s parental rights was in A.M.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2021).

### APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West Supp. 2021). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019).

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are

4

not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25).[4] We must determine

---

[4] C.M. presents his factual insufficiency argument relying on a traditional factual sufficiency standard which the Supreme Court determined was inadequate to afford the protections inherent in the clear and convincing standard of proof. *See In re J.F.C.*, 96 S.W.3d at 264-66.

whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### BEST INTEREST

C.M. does not challenge any of the statutory grounds for termination and as a result, the trial court's findings related to those grounds are final. However, he does question the sufficiency of the evidence to support the trial court's best interest finding.

To assess the trial court's best interest finding, we consider factors enumerated in the non-exhaustive list set forth in section 263.307(b) of the Family Code. We also consider other factors when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong

6

conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See id.* at 28. But such evidence does not relieve the Department of its heightened burden of proof to show that termination is in a child's best interest. *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.).

The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

### ANALYSIS

Regarding A.M.'s desires, she expressed over and over during her forensic interview that she only loved her mother and wanted to live with her. She was also unwavering about not wanting to live with her father. She was extremely emotional during the interview and expressed intent to move out of her current living situation when she turns fifteen. She told the interviewer she had contemplated running away and suicide.

During trial, when A.M.'s former caseworker was asked whether it would be in A.M.'s best interest to return to her father, she answered, "[n]o." Both the former and current caseworker testified that termination of C.M.'s parental rights to A.M. and

7

permanent placement with her maternal grandfather, step-grandmother, and two older siblings was in her best interest.

Furthermore, C.M. did not appear for the final hearing or maintain contact with the Department or even his own attorney. The former caseworker believed he was living in Tennessee. A.M.'s current caseworker testified that while she was supervising the case, she had no contact with C.M. He was not answering his phone and she had no mailing address for him.

The Department's initial goal was family reunification. To that effect, C.M. signed a family service plan that was explained to him; however, he was only working some of his services and did not complete most of them.[5] A hair follicle test and urinalysis were both negative for drugs and C.M. had several "no shows" for drug testing. He never provided the Department with any documentation on his income because he did not want to reveal the amount of his earnings. Throughout the proceedings, he did not provide support for A.M., financial or otherwise. Based on C.M.'s lack of progress with his services and his lack of cooperation, the Department changed the goal from family reunification to termination and relative adoption.

At the time of the final hearing, A.M. was living with her maternal grandfather and step-grandmother. Her two older siblings also resided with them and had been adopted by the grandparents. The grandfather testified that, with the assistance of a private

---

[5] Substantial compliance or excuses for noncompliance with a family service plan is not synonymous with completion. *In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.). "Substantial compliance" may be a factor in determining whether termination is in a child's best interest. *In re B.P.*, No. 07-14-00037-CV, 2014 Tex. App. LEXIS 8127, at *13 n.6 (Tex. App.—Amarillo July 25, 2014, pet. denied).

attorney, he hoped to adopt A.M. and keep the siblings together. A.M.'s former and current caseworker both testified they had no concerns with A.M.'s placement. The grandparents were protective of A.M. and were meeting her physical, emotional, and financial needs. They also testified that A.M. was very happy with her current placement and was doing well in school.

Despite A.M. recanting her allegations of sexual misconduct by her father, the evidence presented supports the trial court's finding that termination of C.M.'s parental rights was in A.M.'s best interest. C.M. was aware of the requirements of his service plan and did not comply with most of those requirements. He did not appear for the final hearing nor did he maintain contact with the Department or his attorney. The evidence shows that A.M.'s grandparents were providing her with a safe and stable home—the paramount consideration in determining what is in the best interest of a child. Based on this record, we conclude the trial court did not err in finding that the Department presented clear and convincing evidence to support a finding that termination of C.M.'s parental rights to A.M. was in her best interest. Accordingly, C.M.'s sole issue is overruled.

CONCLUSION

The trial court's *Order of Termination* is affirmed.

Patrick A. Pirtle
Justice
