

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00516-CV

**IN THE INTEREST OF F.M. III,** a minor child

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 15-0076-CV
Honorable Thomas Nathaniel Stuckey, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 30, 2017

AFFIRMED

Appellant F.M. Jr. appeals the trial court's order terminating his parental rights to his child,

F.M. III.[1]  In his only issue on appeal, F.M. Jr. asserts the evidence was neither legally nor factually

sufficient for the trial court to find, by clear and convincing evidence, that terminating his parental

rights was in his child's best interest.  We conclude the evidence is both legally and factually

sufficient, and we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2014, the Texas Department of Family and Protective Services received

a referral alleging neglectful supervision of a minor child, F.M. III.  F.M. III was eighteen months

at the time of the referral.  The referral was based on a narcotics raid of the home shared by F.M.

---

[1] To protect the minor's identity, we refer to the father and the child using aliases.  *See* TEX. R. APP. P. 9.8.

Jr., E.M., and F.M. III. Appellant F.M. Jr. is the biological father of F.M. III. Because the termination of the parental rights of E.M., F.M. III's mother, is not at issue in this appeal, we limit our facts to those related to Appellant F.M. Jr.

On January 13, 2015, the Department filed its Original Petition for Protection of a Child and for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. Included in the motion was a request for Temporary Managing Conservatorship of the child. On January 26, 2015, the trial court issued temporary orders appointing the Department as temporary managing conservator of F.M. III and F.M. III's maternal grandparents were named as temporary possessory conservators. F.M. Jr. was not present at the hearing.

On July 26, 2016, after several permanency hearings and a bench trial on the merits, the trial court terminated F.M. Jr.'s parental rights to F.M. III based on (1) subparagraphs (D), (E), (N), (O), and (Q) of section 161.001(b)(1), *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2016), and (2) a determination that such termination was in the child's best interest, *see id.* § 161.001(b)(2).[2]

---

[2] Texas Family Code sections 161.001(b)(1)(D), (E), (N), (O), and (Q) provide as follows:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . .

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
(i) the department has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]

. . .

F.M. Jr. does not challenge the trial court's findings concerning the statutory grounds for involuntary termination of his parental rights. *See id.* § 161.001(b)(1); *see also In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). Instead, he argues the evidence was neither legally nor factually sufficient for the court to find, by clear and convincing evidence, that terminating F.M. Jr.'s parental rights was in F.M. III's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *J.F.C.*, 96 S.W.3d at 261.

SUFFICIENCY OF THE EVIDENCE

**A.      Standard of Review**

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id.* (citing *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.— Corpus Christi 2006, no pet.)).

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b); *J.F.C.*, 96 S.W.3d at 261. "There is a strong presumption that the best interest of the child is served by keeping the child with its natural parent,

---

(Q) knowingly engaged in criminal conduct that has resulted in the parent's:
    (i)   conviction of an offense; and
    (ii)  confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;

TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (Q).

and the burden is on [the Department] to rebut that presumption." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The same evidence of acts or omissions used to establish grounds for termination under section 161.001(b)(1) may be probative in determining the best interest of the child." *Id.*

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true," the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord C.H.*, 89 S.W.3d at 25.

Here, F.M. Jr. does not challenge the trial court's finding that he committed one or more of the statutory grounds of involuntary termination. We, therefore, turn to whether the evidence was legally and factually sufficient to support the trial court's finding that termination was in the child's best interest.

**B.     Evidence Regarding the Best Interest of the Child**

Before a trial court may terminate a parent's rights to a child, the court must make a determination that such "termination is in the best interest of the child."  TEX. FAM. CODE ANN. § 161.001(b)(2); *accord J.F.C.*, 96 S.W.3d at 261.

Applying the applicable standards of review for sufficiency of the evidence, we examine all the evidence, *see J.F.C.*, 96 S.W.3d at 266; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (crediting or disregarding evidence), and recite below the evidence that especially pertains to the *Holley* factors, *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The matter was called for trial on July 15, 2016.  F.M. Jr. was incarcerated and the trial court proceeded with the voluntary termination of E.M.'s parental rights and recessed the matter.

On July 26, 2016, the trial court heard live testimony from several witnesses, including F.M. Jr., and arguments from the Department's attorney, the child's ad litem, and counsel for F.M. Jr.

*1.     Tiffany Denham*

Tiffany Denham, an investigator with the Department at the time of the referral, was the first witness called to testify.  Denham testified the referral alleging neglectful supervision was based on a search warrant conducted by the Guadalupe County Narcotics Division.  F.M. III was living in the house with both parents.  Following the search, F.M. Jr. was arrested for narcotics offenses.  Denham explained that F.M. Jr. was released on bond prior to her making contact with him.  As a result, Denham did not have any contact information for F.M. Jr.

Although a service plan was created for F.M. Jr., Denham did not deliver the plan to F.M. Jr. and he did not sign the safety plan.  At some point, F.M. Jr. did leave a message on Denham's voicemail, but he failed to leave any contact number or information.  After the Department

determined E.M. could not appropriately care for F.M. III, the child was placed with his maternal grandparents.

### 2.   *David Camacho*

Investigator David Camacho, with the Guadalupe County Narcotics Division, executed the search warrant on F.M. Jr.'s residence.  F.M. Jr. claimed ownership of the illegal narcotics, methamphetamines and heroin.  Based on his experience, Investigator Camacho testified the amount of drugs seized during the search warrant was a large quantity, "a drug dealer amount."  The officers seized drugs, scales, baggies, and syringes, many of which were located on the bedroom closet floor.  Investigator Camacho testified the drugs and paraphernalia were easily accessible to one-year-old F.M. III.  F.M. Jr. was charged with manufacture and delivery of methamphetamines and heroin.

### 3.   *Jessica Kathka*

In September of 2015, Jessica Kathka was the caseworker assigned to the case involving F.M. III.  In March of 2015, F.M. Jr.'s bond was revoked and he was reincarcerated.  Kathka testified that she visited F.M. Jr. several times at the local jail.  Although no services were available at the Guadalupe County Jail, Kathka explained F.M. Jr. could have maintained contact with her and with F.M. III.  According to Kathka, the only correspondence sent by F.M. Jr. were two pictures in a month and a half prior to the hearing.

Kathka also testified that F.M. III had been living with his maternal grandparents since January of 2015.  The grandparents had expressed a desire and an ability to adopt F.M. III.  Kathka testified that she believed termination of F.M. Jr.'s parental rights was in F.M. III's best interest because F.M. Jr. "hasn't been around to be able to work services to show that he can provide a stable and a safe environment for his son."  Additionally, F.M. III had been in his grandparents'

home for eighteen months. The home provided consistency for the child and F.M. III had bonded well with both grandparents.

Furthermore, F.M. Jr. entered a guilty plea to the drug charges in exchange for a twenty-five year sentence. Adoption would allow for permanency and a stable life for F.M. III.; it would also allow the grandparents to collect a monthly stipend for F.M. III's care.

On cross-examination, Kathka acknowledged that shortly before the hearing, in July of 2016, F.M. Jr. relayed that his sister and his father's girlfriend would be willing to step forward and provide F.M. III assistance.

*4.      F.M. Jr.*

F.M. Jr. testified that he maintained contact with F.M. III, but not through his caseworker. He sent pictures and letters to E.M., while she was working at Goodwill. Because a no-contact order was in place, F.M. Jr. did not tell his caseworker. He also called his mother-in-law when possible. Although he did not have money to call from prison, while he was in holding at the Guadalupe County Jail, he was able to make several three-way telephone calls and talk to his son. F.M. Jr. also testified that his numerous requests for help from his caseworker went unanswered.

F.M. Jr. opined that, despite his mistakes, he believes he is a "wonderful father." "You know, I've made mistakes. We all do in life. And I love my children."

*5.      Christina M.*

The final witness was Christina M., F.M. Jr.'s sister. Christina testified that she was supportive of the family, that E.M. had lived with her for several months during the case and that she recently took money to F.M. III's grandmother for diapers. Christina did not believe termination was in F.M. III's best interest. She explained that F.M. Jr. would not be in prison for the rest of his life and that he would want his children. Christina further opined that F.M. Jr. was not a bad person and that his troubles came from "trying to make money the fast way."

## *C.*     **Factors Considered by the Trial Court**

The trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witness. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (requiring appellate deference to the factfinder's findings); *City of Keller*, 168 S.W.3d at 819. The factors used to ascertain the best interest of the child were set forth in *Holley*, 544 S.W.2d at 371–72; *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors). The *Holley* Court warned that "[t]his listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley*, 544 S.W.2d at 372; *accord In re E.N.C.*, 389 S.W.3d at 807 (describing the Holley factors as nonexclusive). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. In fact, evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in a child's best interest— especially when undisputed evidence shows that the parental relationship endangered the child's safety. *See Id.*

In addition to consideration of the *Holley* factors, courts remain mindful that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016); *In re B.R.*, 456 S.W.3d 612, 615 (Tex. App.—San Antonio 2015, no pet.). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). In determining whether a parent is willing and able to provide the child with a safe environment, courts should consider the following statutory factors set out in section 263.307(b) of the Code, which include the following:

(1)     the child's age and physical and mental vulnerabilities;

(2)     the frequency and nature of out-of-home placements;

(3)     the magnitude, frequency, and circumstances of the harm to the child;

(4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)     whether the child is fearful of living in or returning to the child's home;

(6)     the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)     whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)     whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)     whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills . . .; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (citing *In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.)); *B.R.*, 456 S.W.3d at 616.

When determining the best interest of a child, a court "may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *B.R.*, 456 S.W.3d at 616 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). A factfinder may also measure a parent's future conduct by his or her past conduct to aid in determining whether termination of the parent-child relationship is in the best interest of the

child.  *Id*.  Finally, the grounds on which the trial court granted termination, pursuant to section 161.001 of the Code, "may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not ipso facto prove that termination is *currently* in the child's best interest."  *In re O.N.H*., 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (internal citation omitted).

**D.      Analysis of Children's Best Interest**

   *1.      Desires of the Child*

F.M. III was only three years old at the time of the termination hearing and did not testify. The evidence supports that F.M. III was happy and healthy and doing well in his grandparents' residence; his grandparents hoped to adopt F.M. III.   Additionally, Jessica Kathka, the Department's caseworker, testified F.M. III was doing well, was well fed, and was thriving in his current placement.  *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72.

   *2.      Emotional and Physical Needs of the Child*

The evidence further indicates F.M. Jr. knowingly placed or knowingly allowed F.M. III to remain in conditions or surroundings which endangered the child's physical and emotional well-being.  He also engaged in conduct that knowingly placed the child with persons who were engaged in conduct that endangered F.M. III's physical or emotional well-being.  *See O.N.H*., 401 S.W.3d at 684 (concluding trial court permitted to consider parent's past conduct in best interest determination); *see also* TEX. FAM. CODE ANN. § 263.307(b)(8), (11) (providing that, in determining best interest, courts may consider history of substance abuse by child's family or others who have access to the child's home); *Holley*, 544 S.W.2d at 371–72.

   *3.      Parenting Abilities and Services Available*

Although F.M. Jr. was not originally provided a copy of the service plan, this lack of information was due to F.M. Jr.'s failure to contact the Department.  He knew F.M. III was placed

in his mother-in-law's home, but he failed to provide any phone number or contact information to the Department.

Additionally, although no actual services were available to F.M. Jr. when he was incarcerated at Guadalupe County Jail, he failed to maintain sufficient contact with the caseworker or F.M. III. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *Holley*, 544 S.W.2d at 371–72.

Accordingly, based on this evidence, the trial court could have formed a firm belief or conviction that F.M. Jr. failed to work with the Department and did not fully comply with the terms of his service plan that were attainable. *See J.L.*, 163 S.W.3d at 85; *J.F.C.*, 96 S.W.3d at 261.

### 4. *Stability of the Home or Proposed Placement*

The record reflects F.M. III is currently living with his maternal grandparents in a stable and loving home; his brother is also in the home and both children are thriving. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. Additionally, F.M. III's grandparents desire for F.M. III to stay with them permanently and are hoping to move forward with the adoption process following termination of both parents' parental rights. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *Holley*, 544 S.W.2d at 371–72.

In contrast, F.M. Jr. acknowledged both the drug activity in the residence and his contacting E.M. when he knew that the Department specifically forbade such contact. *See* TEX. FAM. CODE ANN. § 263.307(b)(11) (willingness of child's family to effect positive and personal changes); *Holley*, 544 S.W.2d at 371–72.

### 5. Holley *Factors and Statutory Grounds*

Given F.M. Jr.'s admissions, as well as his explanation that his conduct was "a mistake" akin to those "[w]e all do in life," it was reasonable for the trial court to conclude F.M. Jr. would not protect F.M. III's emotional and physical well-being. *See* TEX. FAM. CODE ANN.

§ 263.307(b)(3), (4), (7), (11); *Holley*, 544 S.W.2d at 371–72; *see also B.R.*, 456 S.W.3d at 616

(stating factfinder may measure future conduct by past conduct).

      The trial court found, and A.P. does not challenge on appeal, that A.P.

- knowingly placed or knowingly allowed F.M. III to remain in conditions or surroundings which endangered this child's physical or emotional well-being;
- engaged in conduct or knowingly placed F.M. III with persons who engaged in conduct which endangered the child's physical or emotional well-being;
- constructively abandoned F.M. III;
- failed to comply with the provisions of a court ordered service plan; and
- knowingly engaged in criminal conduct that has resulted in F.M. Jr.'s imprisonment and inability to care for F.M. III for at least two years.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (Q).  The trial court's

determination regarding F.M. Jr.'s termination under section 161.001(b)(1) is properly considered

in its findings that termination is in the best interest of the child and is, in fact, probative in

determining the child's best interest.  *See C.H.*, 89 S.W.3d at 28 (holding the same evidence may

be probative of both section 161.001(b)(1) grounds and best interest); *O.N.H.*, 401 S.W.3d at 684.

      Reviewing the evidence under the two sufficiency standards, and giving due consideration

to evidence that the trial court could have reasonably found to be clear and convincing, we

conclude the trial court could have formed a firm belief or conviction that terminating F.M. Jr.'s

parental rights to F.M. III was in the child's best interest.  *See J.L.*, 163 S.W.3d at 85; *J.F.C.*, 96

S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108.  Therefore, the evidence is legally and

factually sufficient to support the trial court's order.  *See J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*,

209 S.W.3d at 108.

## CONCLUSION

The trial court found F.M. Jr. committed the statutory grounds supporting termination of his parental rights and that termination of F.M. Jr.'s parental rights was in F.M. III's best interest. F.M. Jr. only appealed the best interest of the child finding.

Having reviewed the evidence, including F.M. Jr.'s acknowledgement of manufacturing and delivering methamphetamines and heroin, with F.M. III in the residence, J.M. Jr.'s incarceration, his failure to maintain contact with the child, and the stability of the child's placement, we conclude the evidence was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of F.M. Jr.'s parental rights to F.M. III was in the child's best interest.

Accordingly, we overrule F.M. Jr.'s sole issue on appeal and affirm the trial court's order.

Patricia O. Alvarez, Justice