

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00324-CV

**IN THE INTEREST OF A.A.M.** and R.M.M., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00737
Honorable Richard Garcia, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: September 9, 2015

AFFIRMED

This is an accelerated appeal from the trial court's judgment terminating appellant's parental rights to his two children, A.A.M. and R.M.M. On appeal, appellant asserts the evidence is insufficient to support a finding that termination is in the children's best interest. We affirm.

### BACKGROUND

Appellant, the legal father of the two children, did not appear at the termination hearing. His attorney stated he had numerous telephone numbers for appellant, he tried calling appellant, and appellant did not return his calls. After appellant's counsel's "not ready" announcement was denied, the court heard from two witnesses: Jill Murray, the CPS worker, and Allison R., the maternal grandmother.

Murray testified A.M.M. was eight years old and R.M.M. was two years old at the time of the termination hearing,[1] and the Texas Department of Family and Protective Services (the "Department") took managing conservatorship of the children in April 2014 based on domestic violence and drug use by both parents. At the time of trial, the mother of the two children had completed her service plan, and the children were residing with Allison. Murray said the mother was allowed to visit with the children at Allison's house. The mother and Allison both agreed Allison should be named sole managing conservator and the mother named possessory conservator.

Murray said appellant did not complete his service plan, nor has he engaged in any form of services. Murray stated appellant admitted to her his use of methamphetamines and he had a positive UA in September 2014. She also said appellant has not engaged in any substance abuse treatment, as required under his service plan. Murray said appellant has not had regular contact with his children, he has missed forty-five visits, and he has not seen them since she took the case in September 2014. She believed terminating appellant's parental rights was in the children's best interest.

As to eight-year-old A.M.M., Murray said the child "is still dealing with some of the issues, seeing the dad be the perpetrator of violence." She said A.M.M. is doing well in school and transitioned well, but A.M.M. has told her "he has no desire to have a relationship with his father." Murray did not testify about two-year-old R.M.M.'s desires.

Murray said both children "are stable and [Allison] and the mom have put their needs above the children [sic] and have been able to provide a safe environment for the children." When asked

---

[1] The bench trial was conducted on May 5, 2015.

what appellant has done that caused her to believe termination would be in the children's best interest, Murray responded:

> Well, the father hasn't done anything. He hasn't alleviated any of the safety concerns as to why the Department had to get involved. He's had no rehabilitation of anything through this case and he's not stable. He is still using methamphetamines and that would endanger the children being with him.

Murray said she was aware of appellant's drug use based on her conversations with him, with the most recent conversation the day before the termination hearing, and he acknowledged "off and on" drug use.[2] Murray said she told appellant failure to complete his service plan could lead to termination of his parental rights. She also said she told appellant about the date of the termination hearing. Murray said the last address she had for appellant was for a house in which he had been living with a girlfriend, who also had an open CPS case, but they had moved several times and she did not know appellant's current address. She said she tried to ascertain this information from appellant, but he would not tell her where he was living.

Murray recommended the children's mother have as many visits as possible, with the only condition being that she remain cooperative and she agree with Allison about a visitation schedule. She said the visitations did not need to be supervised. Murray believed it was in the children's best interest to remain with Allison, with Allison and the mother mutually agreeing to a visitation schedule.

Murray believed appellant may cause problems with either the children's mother or Allison, and she believed a restraining order would be appropriate.

The next and final witness was Allison R., the children's maternal grandmother with whom the children had been residing. Allison said she agreed to be the sole managing conservator of the

---

[2] The trial court asked Murray what she meant by "off and on," and she replied appellant used "weekly, maybe one day he uses, he takes a couple of days [off], he uses again."

children, and that her daughter be a possessory conservator. She also agreed to visitation between the children and their mother, and she waived any child support from their mother at this time.[3]

Allison said appellant had assaulted her in the past, and, during a supervised visitation, he stole "identity items" from her. She said that before the Department's case began, appellant stole her checks and twice "cleared out" her bank account. Allison understood appellant had been ordered to pay child support, but she had received nothing from him. When asked if she was aware of any assets held by appellant that could satisfy a judgment for past-due child support, Allison responded that appellant had "gone through two inheritances and sold his house since this has begun and gone through all the money." Allison also thought a restraining order or permanent injunction was appropriate.

The trial court signed a final judgment (1) terminating appellant's parental rights, (2) appointing Allison sole managing conservator of both children, (3) appointing the mother possessory conservator of both children, (4) ordering the mother to pay child support to Allison and awarding Allison a judgment against appellant for child support arrearages, and (5) permanently enjoining appellant from, among other things, any contact with Allison, the mother, and the children.

**BEST INTEREST**

A trial court may order termination of the parent-child relationship only if the court finds by clear and convincing evidence one or more statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2); § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

---

[3] The children's mother was unemployed and unable to secure employment. However, the mother would provide Medicaid for the children in lieu of child support.

sought to be established." *Id.* § 101.007. We review the sufficiency of the evidence to support the termination of parental rights under the well-established standards for legal and factual sufficiency of the evidence. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

Courts also may apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.*

Finally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

### A.    Section 263.307(a) Factors & The *Holley* Factors

Other than that he was two years old at the time of the termination hearing, no other evidence specific to R.M.M. was adduced. A.M.M. was eight years old, still dealing with "issues" stemming from witnessing appellant "be the perpetrator of violence," and had expressed a desire to have no relationship with his father. No specific evidence was offered on several of the *Holley* and section 263.307(a) factors; however, the analysis of one factor in a given case may be sufficient to support a finding that termination is in the child's best interest and no single factor is controlling

on its face. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.); *see also A.S. v. Tex. Dep't of Family & Protective Serv.*, 394 S.W.3d 703, 714 (Tex. App.—El Paso 2012, no pet.) (fact finder not required to consider all factors and undisputed evidence of a single factor may be sufficient to support finding that termination is in child's best interest).

Murray said A.M.M. was doing well in school, both children are in a safe and stable placement with their grandmother, and the grandmother and mother are working together to allow the mother as many visits as possible. The "issues" regarding appellant's "violence" with which A.M.M. was dealing was not elaborated upon, but Allison testified appellant had assaulted her and stolen from her. Murray had recent contact with appellant, including speaking with him about the termination hearing the day before the hearing commenced, and he knew about the hearing. Murray stated appellant has a history of drug abuse and continues to use methamphetamines. Both Murray and Allison believed appellant should be prevented from having contact with Allison and the children's mother.

**B.      Other Considerations**

The evidence proving one or more statutory grounds for termination consisted of appellant's constructively abandoning his children, failing to complete the entirety of his service plan, and using a controlled substance. Also, a trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest. *In the Int. of B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.). Despite knowing his failure to complete his service plan could result in the termination of his parental rights, appellant had not alleviated any of the Department's safety concerns, he had no known living address, he continued to use methamphetamines, and both Murray and Allison believed him to still be a threat. Finally, appellant had paid no court-ordered child support.

## CONCLUSION

After reviewing the entire record, we conclude the State satisfied its burden to establish by clear and convincing evidence that termination of appellant's parental rights to his two children is in the children's best interest. Therefore, we affirm the trial court's Order of Termination.

Sandee Bryan Marion, Chief Justice