

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00080-CV

**IN THE INTEREST OF A.F.C., I.C.C., and A.R.H. Jr.**, Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2015PA01986
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  July 26, 2017

AFFIRMED

This is an appeal from the trial court's order terminating appellant mother's ("Mother") rights to her children, A.F.C., I.C.C., and A.R.H. Jr.  On appeal, Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interests.  We affirm the trial court's termination order.

## BACKGROUND

The record shows the Texas Department of Family and Protective Services ("the Department") first became involved with Mother based on a referral alleging mental health concerns, domestic violence, and drug use.  After Family Based Services proved unsuccessful, the Department filed its petition for termination of Mother's parental rights in the event reunification proved impossible.  The Department removed the children from Mother's care.  Upon removal,

the Department placed the two girls, A.F.C. and I.C.C., in foster care, and placed A.R.H. Jr., a half-brother to the girls, with his paternal grandmother. At the time the petition was filed, A.F.C. and I.C.C. were six and five years old, respectively; A.R.H. Jr. was one.[1]

The Department created a service plan for Mother which required, among other things, that she attend counseling, parenting courses, and an outpatient drug program. The trial court ordered Mother to comply with each requirement set out in the plan. Mother did not complete the requirements of her service plan. Despite the service plan requirements, Mother tested positive for methamphetamines on at least three occasions, and was discharged from a drug treatment program for noncompliance. Twice during this case, Mother was accused of assaulting her own mother, with whom she was living. She was twice incarcerated for the assaults and for a violation of probation.

Throughout the case, the trial court held the statutorily-required status and permanency hearings. Ultimately, the matter moved to a final hearing, during which the Department sought to terminate Mother's parental rights.[2] After considering the evidence, the trial court terminated Mother's parental rights, finding she: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children; and (4) used a controlled substance in a manner that

---

[1] We note that in the parties' briefs, A.R.H. Jr. is listed as having been a week old at the time the Department filed its petition. However, the order appointing the Department as temporary managing conservator of the children stated A.R.H. Jr. was one year old at the time.

[2] The Department also sought to terminate the parental rights of the children's respective fathers. The two fathers in this case each voluntarily relinquished their parental rights. Neither father sought appellate review, and they are not parties to this appeal.

endangered the health or safety of the children and either failed to complete a court-ordered substance abuse treatment program or after completing a court-ordered substance abuse treatment program, continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P) (West Supp. 2016). Additionally, the trial court found termination of Mother's parental rights was in the best interests of the children. *See id.* § 161.001(b)(2). Thereafter, Mother perfected this appeal.

## ANALYSIS

On appeal, Mother does not contest the trial court's findings under sections 161.001(b)(1) of the Texas Family Code ("the Code"). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P). Rather, she contends only that the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interests. *See id.* § 161.001(b)(2).

### *Standard of Review*

A court may terminate a parent's rights to her children only if the court finds by clear and convincing evidence the parent violated a provision of section 161.001(1) and termination is in the best interests of the children. *Id.* § 161.001(1), (2). The Code defines "clear and convincing evidence" as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because the termination of parental rights results in permanent and unalterable changes for both parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Thus, when reviewing a termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that termination was in the child's best interest. *J.F.C.*, 96 S.W.3d at 267; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

In addressing a legal sufficiency challenge in parental termination cases, the court views the evidence in the light most favorable to the trial court's findings and judgment, and any disputed

facts are resolved in favor of the trial court's findings if a reasonable fact finder could have so resolved them. *J.F.C.*, 96 S.W.3d at 267. The court must disregard all evidence that a reasonable fact finder could have disbelieved and consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In other words, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

In addressing the factual sufficiency challenge, we give due deference to the trier of fact's findings, avoiding substituting our own judgment for that of the fact finder. *C.H.*, 89 S.W.3d at 27. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that fact finder could not reasonably have formed a firm belief or conviction[in the truth of the finding], then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266.

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

### *Applicable Law*

In a best interest analysis, we consider the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for acts

or omissions of the parent. 544 S.W.3d 367, 371–72 (Tex. 1976). These factors are not exhaustive and a court may consider other factors. *Id.* at 372. Also, a court need not find evidence of each and every factor to terminate the parent-child relationship. *C.H.*, 89 S.W.3d at 27. According to the Texas Supreme Court, "the absence of evidence about some of these considerations would not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* Furthermore, in conducting our review of the trial court's termination, rather than focusing on the parent's best interest, we will focus on whether termination of the parent-child relationship is in the best interest of the child. *Id.*

We recognize courts indulge in the strong presumption that maintaining the parent-child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, promptly placing the child in a safe environment is also presumed to be in his or her best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, in addition to the *Holley* factors, a court should consider the following factors in determining whether the children's parent is willing and able to provide the children with a safe environment: (1) the child's age and physical and mental vulnerability; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's

family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

Moreover, although proof of acts or omissions under section 161.001(b)(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *C.H.*, 89 S.W.3d at 28. In conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *In re B.R.*, 456 S.W.3d 612, 616 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Additionally, a trier of fact may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

### *The Evidence*

As Mother points out, at the final hearing, the Department presented limited evidence with regard to several of the *Holley* factors — the desires of the children, programs available to assist in promoting the best interests of the children, and Mother's parental abilities. However, as stated above, a court need not find evidence of each *Holley* factor before terminating the parent-child relationship. *C.H.*, 89 S.W.3d at 27. The absence of evidence as to one or more of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Here, despite the lack of evidence as to all of the *Holley* factors, we hold the evidence that does exist is legally and factually sufficient to support the trial court's finding that it was in the children's best interests to terminate Mother's parental rights.

In our review, we have considered the *Holley* factors and the statutory factors in section 263.307(b) of the Code. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley*, 544 S.W.2d at 371–72. We have also considered the acts or omissions as found by the trial court under section 161.001(b)(1) of the Code, as well as the circumstantial evidence, subjective factors, and the totality of the evidence. *See In re R.S.D.*, 446 S.W.3d 816, 820 (Tex. App.—San Antonio 2014, no pet.).

At the termination hearing, the Department called three Department caseworkers: (1) Amy Loper; (2) Orlando Herrera; (3) and Leonor Cisneros-Salazar. The Department also called A.R.H. Jr.'s paternal grandmother, who provided testimony relating to her willingness to care for and adopt A.R.H. Jr. Mother testified on her own behalf.

1. *Desires of the Children*

We recognize, as Mother points out, the Department did not present any evidence directly addressing the desires of the children. However, at the time of trial, A.R.H. Jr. was two years old and likely unable to express his desires regarding conservatorship. When a child is too young to express his desires, a fact finder may consider whether he has bonded with the foster family, is well-cared for by them, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). At the time of trial, Mother had not seen the children, including A.R.H. Jr., for more than a year. Two of the Department caseworkers opined that the children had made significant progress since their placements. The paternal grandmother testified that since A.R.H. Jr. had been in her care, "he [was] bonding to [her and her husband] really good." Thus, the trial court was permitted to consider this evidence regarding A.R.H. Jr.'s desires.

Unlike their half-brother, A.F.C. and I.C.C. may have been able to express their desires. As Mother contends, the Department did not produce evidence as to the older children's desires,

however, its failure to do so is not dispositive in a best interest analysis. *See C.H.*, 89 S.W.3d at 27.

   2. *Emotional & Physical Needs/Emotional & Physical Danger/Parenting Abilities*

Mother's youngest child, A.R.H. Jr., will require constant emotional and physical support because of his age. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and mental and physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. His age renders him vulnerable if he were left in the custody of a parent who uses drugs or exposes him to violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. A.R.H. Jr. relies on caretakers for all his needs and this need will continue for many years. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

Although the record is unclear as to the specific needs and vulnerabilities of the two older children, the Department caseworkers stated A.F.C. and I.C.C. suffered as a result of exposure to violence, drugs, and their Mother's untreated mental health issues. Additionally, the Department caseworkers noted the girls have "special needs" requiring medication and therapy, which they have received since their removal from Mother's care. *See* TEX. FAM. CODE ANN. 263.307(b)(1).

As a result of the children's specific needs, two independent therapists recommended suspending all parent-child visitation with Mother. *See* TEX. FAM. CODE ANN. § 263.307(b)(6) (results of psychiatric, psychological, or developmental evaluations of child, the child's parents, other family members, or others who have access to the child's home). Since the suspension of visits, the children have made significant progress with their therapists. Even after the children's improvement, the Department caseworkers stated the therapists did not recommend reinstating visits with Mother. *See id.* We recognize Mother visited with the children twice in the beginning of her case and the suspension of visits was a unilateral decision. However, the evidence shows the therapists believed Mother's lifestyle was harmful to the children. In sum, the evidence shows

the children have heightened emotional and physical needs that were addressed only by foster care placement and the Department's intervention. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *id.* § 263.307(b) (6); *Holley*, 544 S.W.2d at 371–72.

With regard to the potential emotional and physical danger to the children, there is evidence of Mother's drug use and the existence of domestic violence. The Department presented testimony showing Mother sent a seemingly inadvertent text message to a caseworker asking for "yellow," a street name for drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by child's family or others who have access to child's home); *Holley*, 544 S.W.2d at 371–72. Mother admitted using methamphetamines and she tested positive for methamphetamines on at least three occasions. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72.

As part of her service plan, the Department referred Mother to an outpatient drug treatment program. However, Mother was discharged from the program for noncompliance when she arrived under the influence and refused to drug test. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate appropriate agency's close supervision); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable period of time); *Holley*, 544 S.W.2d at 371–72. Furthermore, one caseworker testified Mother admitted she needed to use drugs to comply with the Department's service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Although the parties dispute whether Mother completed a drug treatment program, it is undisputed that Mother returned to using drugs after she allegedly completed treatment. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. The evidence shows Mother uses, and may continue to use, methamphetamines, placing her children in emotional and physical danger. *See* TEX. FAM. CODE

ANN. § 263.307(b)(4) (magnitude, frequency, and circumstances of harm to child); *id.* § 263.307(b)(8); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Mother's issues with domestic violence also placed the children in emotional and physical danger. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (whether there is history of abusive or assaultive conduct by child's family or others who have access to child's home); *Holley*, 544 S.W.2d at 371–72. Mother admitted there were instances of domestic violence with her boyfriend. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72. In addition, as previously noted, Mother was accused of assaulting her mother, with whom she lived, on two separate occasions. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72. Moreover, one of the caseworkers testified the two female children suffered some sort of traumatic experience involving sexual abuse, although the record is unclear regarding the specifics of the incident. Thus, the evidence shows Mother subjected the children to emotional and physical danger when they were in her custody. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (noting domestic violence is evidence of physical and emotional endangerment).

Additionally, Mother did not challenge the trial court's findings that she placed or engaged in conduct that placed her children in conditions that endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E). She also failed to challenge the finding that she used a controlled substance in a manner that endangered the children. *See id.* § 161.001(b)(1)(P). Although this does not relieve the Department from proving termination is in the best interests of the children, it is probative on the best interests issue and shows Mother's propensity for placing her children in dangerous situations. *See C.H.*, 89 S.W.3d at 28; *see also* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72.

The evidence set out above is also relevant to Mother's lack of parenting abilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mother chose to use drugs and engage in violent conduct during a time when undertaking services to regain custody of her children should have been her priority. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Moreover, there are concerns about Mother's ability to parent her children given her refusal to deal with her mental health issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Although the record is unclear as to the specific mental health concerns, Mother admitted hearing voices, suffering from depression, and having suicidal thoughts. Despite these issues, Mother failed to comply with the portion of her service plan requiring a psychosocial or mental health evaluation. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The trial court could have determined, based on this evidence, that Mother lacks the abilities needed to properly parent her young children. *See Holley*, 544 S.W.2d at 371–72.

3. *Available Programs to Assist Individual to Promote Best Interest*

The Department created a service plan tailored to Mother's needs and the trial court adopted the plan as a requirement for reunification. Mother was required, among other things, to seek a mental health or psychiatric evaluation, to attend counseling, to attend parenting courses, and to complete outpatient drug treatment. According to the caseworkers' testimony, Mother failed to complete any part of her service plan, despite the referrals to several available programs. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Although Mother contends, and the caseworkers confirm, she completed a domestic violence class, a parenting class, and an anger management class while she was

incarcerated at Bexar County Jail, the completed courses did not meet the requirements of her service plan. Mother and one of the caseworkers testified Mother began counseling; however, the record shows Mother only attended for a couple of months and failed to complete the program. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. One caseworker testified to Mother's lack of contact with the Department during the case and to helping Mother obtain providers after her release from jail despite Mother's disappearance for several months. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

The evidence establishes that despite the availability of services and programs provided by the Department, Mother chose not to engage. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Rather, Mother chose to continue to engage in conduct that originally resulted in the removal of her children.

As stated above, this choice is also relevant to Mother's parenting skills. Based on the evidence showing Mother's almost complete failure to participate and complete her service plan, she has demonstrated a lack of motivation to improve her parenting skills, which are questionable given her lifestyle choices. *See In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.) (holding that trier of fact could have formed firm belief that parent was not motivated to improve parenting abilities given failure to avail herself of programs provided); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

4. *Plans for Children by Those Seeking Custody/Stability of Home or Proposed Placement*

At the time of the final hearing, Mother was incarcerated. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72. Although Mother speculated she might be released from jail within two months, her plans after her release were vague and uncertain. *See*

TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Moreover, upon release, she would be required to attend a drug treatment program, which due to her prior inability to comply with treatment, the trial court may have inferred Mother would be unable to complete. *See B.R.*, 456 S.W.3d at 616 (allowing trier of fact to measure future conduct by prior conduct). Furthermore, the testimony established Mother failed to obtain stable housing and was forced to move in with her mother. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Although Mother contends she was employed at a temporary agency, she failed to provide proof of employment to the Department, and when the caseworker called to verify her employment, the agency stated Mother worked for one day and never returned. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. In sum, Mother's continued drug use, lack of housing plans, unemployment, and incarceration portend future instability and "[a]s a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Most telling, Mother testified her service plan was "hard" and her current incarceration would not allow her to provide care for her children. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Additionally, Mother testified she was happy with A.R.H. Jr.'s placement with his paternal grandmother. Regarding her two older children, Mother stated her life has been "lacking in the stability that [her] girls need" and she wants them to be in a placement where they can continue to develop well. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

The Department also provided evidence regarding the current and future placement of the children. The evidence shows the planned placements are supportive and stable. *See Holley*, 544 S.W.2d at 371–72. As for A.R.H. Jr., his paternal grandmother, who is also his foster mother, testified he is doing "really good" and bonding with her family. *See id.* Furthermore, she testified she and her husband are willing to adopt A.R.H. Jr. and raise him as if he were their own child. *See id.* She is also willing to maintain a relationship between A.R.H. Jr. and his half-sisters. *See id.*

A.F.C. and I.C.C. were in foster care at the time of the final hearing. As Mother points out, their current foster family is not able to adopt the girls; however, the Department testified about permanency plans for the girls. The Department intends to place them with family friends of their maternal grandmother. *See id.* The evidence shows that at the time of the final hearing, these family friends were going through the process to become licensed and certified foster parents as a precursor to adoption. *See id.* The Department caseworkers testified they supported the family's efforts and were positive with regard to the family's ability to care for the girls after completion of the process. *See id.* The caseworkers testified the proposed adoptive parents were aware of the girls' special needs and were still dedicated to their adoption. *See id.* The evidence also shows the potential adoptive parents are aware of the girls' half-brother, A.R.H. Jr., and are willing to continue to foster a sibling relationship between the children. *See id.*

Additionally, the Department caseworkers testified about the improvements the two older children have made since their placement in foster care. Prior to their foster care placement, the children did not express emotion or discuss their traumatic experiences. Since their removal from Mother's care, the caseworkers testified the older children have begun to open up, laugh, and smile. Each caseworker expressed support for the proposed placements for all three children and their disapproval of returning the children to Mother's care. *See Holley*, 544 S.W.2d at 371–72.

*Summation*

The evidence shows Mother exposed her children to drug use and domestic violence, endangering their physical and emotional well-being. She engaged in criminal behavior, including assaulting her mother, which resulted in Mother's incarceration. Mother failed to comply with her service plan, despite reasonable time and opportunity. Mother's conduct prior to the Department's removal of the children and subsequent thereto shows she is unable to care for her children — she is unable to resolve her own mental health and drug issues.

Therefore, based on the foregoing, we hold the evidence, when considered in light of the relevant *Holley* factors and statutory considerations, weighs in favor of a finding that termination was in the best interests of Mother's children. Given the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of Mother's parental rights would be in her children's best interests. In other words, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the children's best interests.

## CONCLUSION

We hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find termination was in the best interests of A.F.C., I.C.C., and A.R.H. Jr. Accordingly, we hold the trial court did not err in terminating Mother's parental rights, overrule Mother's sole issue, and affirm the trial court's termination order.

Marialyn Barnard, Justice