

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00787-CV

**IN THE INTEREST OF O.B.** Jr., E.D.C., D.R.C., E.H.C., and T.M.C., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-02169
Honorable H. Paul Canales, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  March 28, 2018

AFFIRMED

Appellant M.G. appeals the trial court's order terminating her parental rights to her children O.B. Jr., E.D.C., D.R.C., E.H.C., and T.M.C.[1]  M.G. asserts the evidence is neither legally nor factually sufficient for the trial court to have found by clear and convincing evidence that terminating her parental rights is in her children's best interests.

Having reviewed the evidence, we conclude it is legally and factually sufficient to support the findings, and we affirm the trial court's order.

---

[1] To protect the minors' identities, we refer to the mother and the children using aliases.  *See* TEX. R. APP. P. 9.8.

## BACKGROUND[2]

In December 2015, the Department of Family and Protective Services received a report that M.G.'s newborn child tested positive at birth for marijuana. The Department offered M.G. services to help her parent her six children, but she did not take advantage of the services. In the ensuing months, the Department received several more reports regarding M.G. The reports included domestic violence in the home, unsanitary home conditions, and drug abuse. In May 2016, M.G. tested positive for methamphetamines, and she continued to resist receiving services.

In September 2016, M.G. was stopped by a police officer while driving with her children, and she was detained for outstanding warrants. When no suitable family members could be located to take the children, the Department took them and sought their removal. The Department initiated a service plan for M.G., but she did not complete the plan. On November 14, 2017, after a bench trial, the trial court terminated M.G.'s parental rights to five of her children, and she appeals.

## EVIDENCE REQUIRED TO TERMINATE PARENTAL RIGHTS

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see*

---

[2] Because M.G. is the only appellant, we limit our recitation of the facts to those that pertain to M.G. or the children.

*also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *D.M.*, 452 S.W.3d at 472.

**STANDARDS OF REVIEW**

**A.     Legal Sufficiency**

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

**B.     Factual Sufficiency**

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.

## BASES FOR TERMINATION

### A.    M.G.'s Course of Parental Conduct

The trial court found by clear and convincing evidence that M.G. failed to comply with her court-ordered service plan.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).[3]  On appeal, M.G. does not challenge the trial court's statutory ground finding.

### B.    Best Interests of the Children

Instead, M.G. challenges the sufficiency of the evidence supporting the trial court's finding that terminating her parental rights is in her children's best interests.  *See id.* § 161.001(b)(2).  We briefly review the law pertaining to determining the best interests of the children.

#### 1.    Statutory Factors

The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1)    the child's age and physical and mental vulnerabilities;

(2)    the frequency and nature of out-of-home placements;

(3)    the magnitude, frequency, and circumstances of the harm to the child;

(4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)    whether the child is fearful of living in or returning to the child's home;

(6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

---

[3] The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria.  *See* TEX. FAM. CODE ANN. § 161.001(b).  Here, the trial court found M.G.'s conduct met the following criteria or ground:

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1)(O).

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills; . . . and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (citing *In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.)); *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.).

### 2. The Holley Factors

The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(B) the emotional and physical needs of the child now and in the future;
(C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody;
. . .
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors); *see also* TEX. FAM. CODE ANN.

§ 263.307(b) (listing statutory factors for "determining whether the child's parents are willing and able to provide the child with a safe environment").

Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(2), 263.307(b); *E.N.C.*, 384 S.W.3d at 807; *J.F.C.*, 96 S.W.3d at 284.

### EVIDENCE OF BEST INTERESTS OF THE CHILDREN

The one-day bench trial on November 14, 2017, concerned M.G., five of her children, and their two fathers. The trial court heard testimony from two Department caseworkers and M.G., and it received recommendations from the children's attorney ad litem. Because M.G. is the only appellant, we relate only the witnesses' testimony that pertains to M.G. or the children.

### A.	First Department Caseworker's Testimony

Suglenda Sanders, a Department caseworker, testified she was the caseworker from shortly after the case began. In December 2015, the Department received a report that M.G.'s newborn child tested positive at birth for drugs. The Department offered services to M.G., but she did not participate.

Over the next eight months, the Department received two more reports for M.G.: one for domestic violence in the home and one for the condition of the home environment. The home had dirty diapers laying out, moldy food in the refrigerator, rodents, piles of laundry, exposed wiring, and dangerous objects on the floor where the very young children were crawling. The domestic violence report was that M.G. was being physically abused by I.T., M.G.'s boyfriend.

The Department also received reports of drug use by I.T. and M.G. M.G. tested positive for methamphetamines in May 2016, but she continued to refuse to participate in services.

In September 2016, M.G. was stopped while she was driving with her children, and she was detained for outstanding warrants. When no suitable family members could be located to take

the children, the Department took the children and sought their removal. Suglenda was called to the scene, and the Department took custody of the children. The Department learned that the oldest two children, though school age, were not enrolled in school. The children reported that I.T. had been violent, including kicking a large hole in the wall during an argument, and physically abusive to M.G. including punching her in the face. I.T. also struck one of the children with a hanger.

Suglenda concluded by noting her major concern for the children was the domestic violence between I.T. and M.G., and M.G.'s willingness to have the children continue to live with I.T. and his family members despite the domestic violence.

**B.      Second Department Caseworker's Testimony**

Ambry Williams, the current caseworker, testified regarding her interaction with M.G. and the children.

The Department created a service plan for M.G., which she signed, and Ambry explained to M.G. that if she failed to work those services, she could lose her parental rights. Despite that warning, M.G. only partially complied with the service plan. The plan included, inter alia, a domestic violence class, a parenting class, counseling, and drug treatment.

M.G. completed the domestic violence class, and she started the counseling in July 2017, but she did not participate consistently until September 2017. M.G. was to be discharged from counseling in December 2017, but Ambry was not certain whether M.G. had successfully completed the counseling.

M.G. reported for at least five of her urinalysis tests, and she tested negative for drugs each time, but she missed several other scheduled and random tests. M.G. completed the Best Option outpatient drug treatment program, but the Department did not have any information on her drug test results while she participated in the treatment program.

M.G. also had not been able to provide proof of income or maintain a stable job. She had been working in June or July of 2017, but she was presently unemployed. She had also not been able to maintain stable housing for the children. Before the children were removed, M.G. and the children had been living with I.T.'s grandfather. But since M.G. left I.T. (the month before trial), the Department did not know where M.G. was living, and a key Department concern was that, for the pendency of her case, M.G. had not been able to demonstrate that she could provide safe and stable housing for the children.

M.G. was consistent in visiting her children. She was bonded to her children and the children were bonded to her.

Ambry noted that the children are in a foster home, and the non-relative foster family wants to adopt the children. The children are doing very well with the foster family. All the children are up-to-date with their health and medical needs, the school-age children are attending school, and the two oldest children are receiving counseling services.

Ambry recommended that the trial court terminate M.G.'s parental rights for several reasons. M.G. had not demonstrated stable housing or consistent employment, and she had relied on I.T. for housing and support during the pendency of the case despite his drug use and domestic violence. She was concerned that M.G. might return to live with I.T., despite his drug use and domestic violence, because of her need for income and housing, and I.T. was the father of M.G.'s youngest child. If M.G. retained custody of the children and she moved back in with I.T., the children would be returned to a physically and emotionally dangerous environment.

## C. M.G.'s Testimony

M.G. testified that her plan was to move into a three-bedroom house with her brother and his roommate. She would have a bedroom for her and her six children. Her brother was willing to co-parent the children, and the children are bonded with her brother. When she asked her oldest

child if he wanted to live with his grandparents or with her brother, her oldest child said he wanted to live with her brother. Her grandmother lives next door to her brother, and her grandmother, grandfather, father, brother, and sister would provide additional support for the children.

M.G. said she completed the drug treatment and parenting classes. She has benefited from the classes and counseling. Of the two most recent times she missed counseling, once was due to her difficulty in finding childcare and the other was because it conflicted with a visit with her children. She testified she was currently employed, she had a plan to house her children with her brother, and she wanted more time to show she could provide stable employment and housing.

## D.    Ad Litem's Recommendations

The children's attorney ad litem acknowledged that the children are bonded to M.G., but M.G. has had over one year to show she can refrain from relationships involving domestic violence, to show she has a steady job, and to show she can provide safe, stable housing for her children, but she has failed to do so. M.G. has had relationships with three different men who are the fathers of her children, and all three "engage her in domestic violence." M.G. has offered, at the last minute, names of family members who she says are willing to help her with the children, but she could have done so much earlier to give the Department time to vet them. Because the children have a great need for stability, and for over one year M.G. has not demonstrated she could provide the stable income, housing, and peaceful family relationships the children need, the ad litem recommended that M.G.'s parental rights be terminated.

## M.G.'S PARENTAL RIGHTS

The trial court heard testimony pertaining to the children's best interests, and the trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *H.R.M.*, 209 S.W.3d at 108.

The trial court heard testimony that M.G.'s newborn child tested positive for drugs in December 2015; six months later, M.G. tested positive for methamphetamines when she was caring for her six children who were ages seven and younger. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (4), (8); *Holley*, 544 S.W.2d at 372 (factors (C), (D), (H)). M.G. allowed her six young children to live in a home that had dirty diapers laying around, moldy food in the refrigerator, rats, piles of laundry, exposed wiring, and dangerous objects on the floor. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (4), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)). She entered and continued relationships with men who brought domestic violence into her home, to the point that one kicked a hole in the wall, struck her child with a hanger, and punched her in the face. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (4), (7), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)). She had more than one year to arrange for stable, safe housing for her children, but it was only shortly before trial that she started making housing arrangements, and her delay did not allow the Department time to investigate her proposed arrangements. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (4), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

The trial court could accept as true the testimony that M.G. loved her children, visited them regularly, and they loved her. But it could also consider the changes and contradictions in M.G.'s testimony regarding her employment, housing, and service plan when it evaluated her credibility. The trial court could believe or disbelieve M.G.'s testimony that she had actually made suitable arrangements for stable housing for her children. *See City of Keller*, 168 S.W.3d at 819; *H.R.M.*, 209 S.W.3d at 108.

Regarding the foster home placement, the trial court could have believed the testimony that the children were loved and being well cared for; their health, education, medical, and other needs

were being met; and the foster family wanted to adopt them. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

Reviewing the evidence under the two standards, we conclude the trial court could have formed a firm belief or conviction that terminating M.G.'s parental rights to her children was in the children's best interests. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27; *see also* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (12). Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27.

## CONCLUSION

On appeal, M.G. does not challenge the trial court's finding that she failed to comply with her service plan. Instead, she argues the evidence is neither legally nor factually sufficient to support the trial court's finding by clear and convincing evidence that terminating her parental rights is in her children's best interests.

Having examined the evidence under the applicable standards of review, we conclude the evidence pertaining to the trial court's findings is both legally and factually sufficient for the trial court to have found by clear and convincing evidence that terminating M.G.'s parental rights to her children is in the children's best interests. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice